Hill Properties, LLC at all versus City of Worcester at all. Is there just one council here? Put down your bag, take a moment, get yourself composed, and then we'll hear you. As the court is aware, the civil rights claim, obviously, that has been brought related to it after the decision of the SGC and College Hill Properties versus the City of Worcester that found that the enforcement actions brought by the City of Worcester could not have been brought under the Lodging House Act as they were, and on that basis, my clients had to get rid of all of their fourth tenants in 12 units, and of course the loss was substantial. Did a Superior Court in Massachusetts agree with the City's interpretation of the statute? They did not, Your Honor. It was the Housing Court. I think that there was an action that had been filed, not on behalf of my clients but others, in the Land Court that expressed the issues that were in it as well. So the Land Court is an independent tribunal, it's not a City administrative agency, is it? No, that is correct. And how do you deal with, if an independent tribunal established under Massachusetts Law Court felt that the filing was in fact correct, how do you move it to the point where the position was abusive? The appeals court decision, obviously. Because the action as stated, the allegations that are in the complaint, I believe would have been actionable at any time because of the way that the enforcement action was brought. So it wasn't so much the application of the Housing Act, the Lodging House Act, because the City of Worcester also had an ordinance that for some unknown reason it didn't bring the actions under, the enforcement of the Lodging House Act. I don't understand how that fits with your statute of limitations problem. The argument is that it was the behavior, the selective nature of the enforcement of the Lodging House Act, that it wasn't enforced against several people that we have identified in the complaint. No, I understand, I'm just saying, I thought part of your argument was you had to wait for the SJC to bring the claim, but now you're saying you didn't have to wait for the SJC. Well, I think that's the paradox of this case. Had any action been brought that alleged that enforcement of the Lodging House Act was actionable while the housing court... But I thought you just were saying to us that it's not that they were enforcing the Housing Act, it's the way they were enforcing the Housing Act. And I assume if that's true, you didn't need to wait to know whether the Housing Act applied, because the argument would be it doesn't matter whether it applies, even if it applies, they can't enforce it in this abusive manner. Let me clarify, it was the select, what I meant was it was the selective nature of its enforcement, not the enforcement of the act itself. Although the SJC did find that it had very little application, no application. Well, then Judge Barron is right. If it was the selective enforcement, you were then on notice as of the time they started the selective enforcement, which according to the district court here, was beyond the three-year period. So of the statute of limitations, any time earlier you could have brought these actions, you knew what was going on, and you didn't, you waited. And then Judge Barron asked you, well, did you have to wait until the SJC ruled? And you said, no, not really. So where are we now? I believe that, you know, as stated in the brief, I think that this thing wasn't fully, in other cases that I've cited, that this was not a fully actionable claim until the SJC decided. Why? Because it was not, they could, had they brought an action, and this is the Hobson's choice of this case, that I think that it took, and that's why I draw a parallel to the malicious prosecution cases, is that it took for the SJC to say that this was wholly wrong, that the application of this was wrong, in order to complete the cause of action. Why? That's what I don't understand. Because I don't think that it was a fully formed cause of action. Well, we could keep going back. I could say why. You could say it's not. What about it was not fully formed? Because I thought, in response to Judge Kayada, when he was asking, well, one way it might not be fully formed is, depending on how unauthorized it was at all, that might bear on how unconstitutional it was. And you said, no, because the nature of the enforcement was such that it was unconstitutional, independent of whether a lower court thought it was legal or whether there was a plausible argument. So that's a perfectly coherent argument. It just creates a problem under the statute of limitations. And I understand that you're on it. I think that part of this is, you know, the argument is, is that the corporations certainly – well, I think it should have been the corporations that were – they owned the property. You know, the enforcement actions. Leave that aside, but they should have been brought against the individuals. But the corporations, the companies there, the LLCs, did not – until this decision came down. I just – I don't believe that the cause of action – there were certain parts of it. It wasn't a fully – it just wasn't a fully – Counsel, then we get to the second part of Judge Kayada's suggestion to you, which is, if there's a land court decision saying the Zoning Act does, in fact, apply, how can you accuse these people of doing something irrational or arbitrary? Because, according to the land court, and I believe the next court in the sequence, the Zoning Act does apply. So that would also undercut a federal claim on the merits, as well as giving qualified immunity to the defendants. I assume you mean the housing court where the enforcement actions were brought. Yeah. The – it is the – you know, like I said, it is the fact that these – that the housing court endorsed it wasn't – isn't the nature of – or the appeals court endorsed it wasn't the nature of the wrong. The nature of the wrong was it was – you know, this is to be enforced against only, like, people like Giorgio, not against Kenzie – I think you just walked around the barn again. I'm sorry, your Honor? So I think what I hear you now saying again is that it's not whether they were right or wrong. It's that they just enforced it against your client because they had it in for your client. I will say this. It certainly helps that the SJC eventually found that there was, you know – Okay. Can I get – you tell a lurid tale of Worcester politics, but it's one that, frankly, I don't understand. Could you start from scratch and say why the city was improperly motivated and took the actions it took? Well, yes. I mean, in the complaint, it was a verified complaint. My client has told me that in a conversation he had with the city manager that it was motivated by, you know, a political animus against, you know, the College of Holy Cross, and they wanted to get them to make a contribution in lieu of – And how does going through your clients help that objective? Your clients don't work for Holy Cross. No, they certainly bore the brunt of – if that is true, and it's a verified complaint, like I said. If the action was brought in, get rid of all of your fourth tenants and we'll make this difficult for you and Holy Cross, which is, you know, I think is proof of that. So you're saying they were trying to dry up a housing supply for Holy Cross by wiping out your client who provided lots of student housing? Yes. Well, at least the, you know, the fourth tenant, he did have to evict the fourth tenant with whom he had a lease. And that somehow is going to cause Holy Cross to pony up more money than it's been willing to do? Well, I believe – yeah, I think that there certainly would apply pressure. I'm sure that there were parents that were on the phone, you know, on Monday morning, you know, after they got evicted, wondering where their children were. So your client calls Holy Cross and says, if you give more money, they'll stop these warrantless searches and these efforts to apply the zoning law? I believe that that was conveyed to the College of Holy Cross, yes. I'm sorry. I believe that that was conveyed to the College of Holy Cross, yes. Is there any affidavit from anyone in your clients that they felt such pressure and that they received any such request from Holy Cross or made any such request to Holy Cross and got a response? The – other than the – Did your client call up Holy Cross and say, give more money to the city and that will take the pressure off us? I – it's not in the complaint, but yes. No, it's not in the complaint. Yeah, I agree. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Kevin Gould, I'm an Assistant City Solicitor for the City of Worcester. I represent the defendants in the FLE City of Worcester and numerous employees. The decision of the District Court in dismissing the College Hills complaint should be affirmed. Before I get to that, the reasons why, I do want to provide a bit of history for the Court in terms of what happened in the State Court. The City brought these actions in the Housing Court to enforce the Lodging House Act. The Housing Court in Worcester affirmed the City's – issued primary injunctions regarding the City's application of the Lodging House Act in this manner and ordered the plaintiffs to no longer have four unrelated individuals living in the units. Did the Housing Court authorize the warrantless searches? No, Your Honor. And again, I believe these alleged warrantless searches occurred before the Housing Court action and as far as I know, the Housing Court never addressed that and I don't believe it was brought up to the Housing Court. We have a complaint and it never got to the point of discovery or summary judgment, so we don't know whether your client did any of this stuff or not. We just have to assume that it did. If for purpose of – and then there's the Statute of Limitations. If you assume that the factual allegations about what the City did were correct, would the City's position be that there's nothing unusual that isn't particularly shocking about that? Your Honor, I would suggest that there's a couple problems for the plaintiffs in terms of there's a Statute of Limitations issue, there's a ripeness issue as it relates to the Fifth Amendment claim, and there's also – But he's dropped that. That's not argued on appeal. The takings claim is out of the case now. And I would suggest to the Court that the alleged warrantless searches do not rise to the level of that shocking of the consciousness for a substantive due process claim. So the City of Worcester, Massachusetts, would not consider it at all shocking to do what's alleged here to one of its citizens. No, Your Honor, that's not what I'm telling you. I don't believe that's the standard that exists. I don't believe that that is the type of egregious conduct that would qualify. So it's beyond review or remedy that the City can do this? Or that the City had – I'm sorry, that the plaintiffs had a remedy in the local court system but bypassed that? Well, the plaintiffs certainly could have brought their substantive due process claim when these alleged acts occurred. And the fact that they held off until 2014, December of 2014, when these alleged warrantless searches occurred in 2009, the beginning of 2010, they didn't bring these. And certainly they would be barred. And the district court was right in determining that this alleged behavior was barred by the statute of limitations. Same for the equal protection claim. You have the plaintiff who, again, brought this suit in December of 2014 and the actions in the housing court occurred in December – at the end of 2009 and the beginning of 2010. So it's alleged at that time that the plaintiff and a comparative class – the plaintiff was prosecuted and a comparative class was not. Can I ask you practically what a landowner is supposed to do in this situation when they've got two parallel objections? They don't like how you're enforcing it and they question your authority to enforce it at all. So they want to challenge your authority to enforce it at all and they're going to go up the chain. If they win on that, then they're going to have gotten, I guess, whatever recompense they can get and they can shut down any future enforcement, et cetera. At the same time, they don't like the particular means that you're enforcing it. Are they really supposed to bring two suits? Your Honor, they certainly can. Well, you're saying they have to, I guess. Well, yes, they would. In terms of the application – How is it supposed to – I mean, is there any joinder or anything where they're sufficiently related to the exact same conduct that they could bring it in one suit? And I don't – well, I think maybe later down the road they possibly could, but I don't necessarily believe that – and in this case, the plaintiffs vigorously fought the application of the Lodging House Act in the Housing Court and the Appeals Court, and they were not victorious. They then, again, brought a direct appellate review to the SJC. In the meantime, when these purported acts occurred, the plaintiff could have certainly brought a claim in the Superior Court as it relates to how the City of Worcester was enforcing this act. You couldn't have brought that in the Housing Court, is that right? No, no. And frankly – And is the same – the flip side to it, too, you couldn't challenge the act's application in Superior Court? You had to bring that in Housing Court? Yes. So because there was an active case in the Housing Court, I don't believe you could then bring a subsequent action in the Superior Court. But in terms of how the City enforced the Lodging House Act – But I'm asking – the challenge to the application of the Lodging Act, does that have to go into Housing Court under state law, or can that go in Superior Court? It could go in both, Your Honor. But I think when you have two active cases, I don't think you can have them on the same track. No, but there's something called an England reservation where you present, in this case, in the case that goes up to the SJC, something that says we also have constitutional claims  but we want to make it clear we prefer to be in federal court on that. Neither of the parties has discussed that option at all. So I think you could have presented to the SJC some of these issues. I'm not quite certain because it wasn't briefed. And they were not. Yeah, they made a choice not to. Yes. Suppose we just look at the post-December 8, 2011, allegations. There's no statute of limitations issue then with respect to them. So that would be the trash and – The trash and the police – the weekly warrantless entries in December 2012 and then the ten visits by the City Inspector and just over two months by the Housing Inspector for failure to remove a roll of toilet paper from the exterior. What do you say about assuming that conduct occurred? Assuming that occurred, again, I don't believe that rises to that level of shocking conduct, egregious behavior that would show that the plaintiff was entitled to relief for a substantive due process claim. Would the plaintiff have any avenue for relief from behavior of that type in state court under state law? He could certainly bring other claims, I believe, even in federal court, but I don't know that a substantive due process claim is one that would be successful. Especially not against the background of two state courts having approved the application of the zoning law. Yes. So it does – that does play something of a role, at least in the substantive due process analysis. What's the content of the allegations in the complaint that are not barred by the statute of limitations in Worcester's view? In our view, I don't believe that the alleged trash inspections would rise to the level of substantive due process violation, at least to the extent that the way the plaintiff has put it into the standard that the First Circuit has applied it. Let me take you back to Judge Barron's earlier question because it's some puzzlement to me. Suppose the plaintiff doesn't have quite enough evidence to make out a substantive due process claim if they are in the position of someone who has violated the act. But if you turn that around and, in fact, they're not violating the act at all, then it casts a different light and it just takes them over the hurdle. Under that scenario, they would have had no claim until it was determined that the lower court decision was reversed. No, I disagree.  Not exactly how the application of the law, but more in how the city applied or enforced the law. A different kind of comparison, I believe. But I think Judge Kaddas' question is, take a certain degree of enforcement that you say, it's not shocking to hear that, it's not great. You would kind of rebel that the notion of saying that's an appropriate way to treat your citizens, but you wouldn't say it shocks the conscience in a constitutional sense. But now if I add to it, oh, and by the way, it was enforcement action taken pursuant to a statute that patently didn't authorize any enforcement action at all. Might that not affect one's conclusion as to whether it shocks the conscience? It could. Okay, and if it could, then doesn't that affect the timeliness of the claim because you'd need to have some final determination as to whether the statute clearly authorized, kind of authorized, or clearly did not authorize it, and who's better to give that interpretation than the SJC? True, but at the same time you have two lower courts who said that that did, you know, it did pass muster, that type of analysis. Right, and then you have an SJC decision that's quite strong saying they're clearly wrong. That is true. But at the same time, you know, they were aware of these purported actions at the time. That they were taken there kindly. Thank you.